TERILL *against* BEECHER :

IN ERROR.

The action of book debt is founded on the necessity of such a provision, to prevent a failure of justice ; and it ought not to be extended beyond that necessity.

To support a charge on book, it must appear, that the right to charge existed at the time of the delivery of the article, and arose in consequence of such delivery.

This action will not lie to recover the value of money or other articles paid or delivered in fulfilment of a contract.

Therefore, where *A.,* a minor, entered into a parol agreement with *B.* to serve him as an apprentice, and to receive, annually, for his services, a certain sum of money, besides his board and instruction ; while *A.* was living with *B.* under this agreement, *B.* furnished *A.* with necessary clothing and some money ; shortly afterwards, *A.* left the service of *B.,* without his consent ; and *B.* brought book debt to recover the value of the supplies furnished ; it was held, that such action was not sustainable.

In book debt, the parties are not unlimited witnesses ; but their testimony is to be restricted to the quantity, quality, and delivery of the articles charged.

The propriety of this action, in a given case, may be tested, by the competency of the parties to testify therein ; as it will lie only for articles, the sale and delivery of which may be proved by such testimony.

THIS was an action of book debt ; to which the general issue was pleaded.

On the trial before the county court, the account exhibited by the plaintiff, consisted of sundry articles of clothing and cash to the amount of 42 dollars, 53 cents. When these articles were furnished to the defendant, he was a minor, of the age of sixteen years, and was living with the plaintiff, under a verbal agreement to serve him as an apprentice at the trade of a blacksmith, until the defendant should arrive at the age of twenty-one years, and to receive for his services, besides board and instruction, a sum not exceeding 25 dollars for the first year, and to be increased five dollars for each successive year during the term. The defendant commenced his service under the agreement, in *August* 1830; and voluntarily quitted it, on the 11th of *September* 1831, without the plaintiff's consent. The articles charged in the plaintiff's account were furnished to the defendant, at his request, in pursuance of the agreement, and with the exception of the cash, were for necessaries, suitable to his wants and condition.

In connexion with these uncontroverted facts, the plaintiff offered evidence tending to prove, that the services of the defendant, during the period of his service, were of no greater value to the plaintiff than the board and instruction furnished by him to the defendant during the same period. The defendant claimed and introduced evidence to prove, that his services were of the value of 25 dollars; which was denied by the plaintiff.

Under these circumstances, the defendant objected to the admission of the plaintiff's account in evidence, on the ground that although it should be found, that the value of the necessaries furnished and charged by the plaintiff exceeded the value of the services of the defendant, or the sum stipulated therefor, still the plaintiff could not recover, in this action, because the defendant was a minor when he entered into the agreement, because it was not in writing or to be performed in one year from the making thereof, and because the articles were charged by the plaintiff, with the expectation of their being paid for, by the services of the defendant, pursuant to the agreement. The court refused to admit the plaintiff's account; and thereupon the issue was found for the defendant. The plaintiff filed a bill of exceptions and brought a writ of error in the superior court, where the judgment of

the county court was affirmed.   To obtain a reversal of the latter judgment, the present writ of error was brought.

*R. S. Baldwin,* for the plaintiff in error, contended, I. That the defendant having rescinded the parol contract of apprenticeship, and left the plaintiff's service, while in arrear for the necessaries supplied, he is responsible for them.   The contract was, undoubtedly, *voidable,* at the election of the minor. If he chose to serve, during the term, the plaintiff was bound to fulfil on his part, and pay the stipulated compensation.   If, on the other hand, he chose to rescind the contract, after serving but one year, he could only claim an allowance for what his services were reasonably worth, without reference to the terms specified in the agreement, which he had voluntarily abandoned.   Neither the plaintiff nor the minor could have any remedy on that agreement against the other.   But the subsequent contract to pay the plaintiff for the necessaries furnished him, the minor had no power to avoid.   The furnishing of them was not required by the original contract ;  they were not furnished under it, and had no connexion with it.   For the *convenience of the defendant,* it was agreed, that the plaintiff should be reimbursed, by the application of his wages, as they were earned, by his services under the original contract. The legal effect of this agreement, in regard to the *mode* of payment, by the defendant, was, that it was optional with him to pay in the wages of his labour or in money.   Though he could not avail himself of his minority, to exonerate himself from his obligation to *pay* for necessaries, yet he was at liberty to avoid any *special mode* of payment.   He could only be obliged to pay in money.   The plaintiff could not compel him to perform the services out of which his wages were expected to accrue.

The defendant being at liberty to pay either in money or in services to be rendered under the original contract, has chosen to rescind that contract and to quit the service of the plaintiff.   He has made his election ; and is, consequently, bound to pay in the same manner as he would have been, if the contract which he has avoided, had never existed.

2.   That book debt is the proper remedy.   The plaintiff cannot sue on the original contract; for that is rescinded ; and if it were not, these articles were not furnished under it.   He

New-Haven,
July, 1832.

Terrill
v.
Beecher.

cannot sue in a special action for not paying for these necessaries in services ; for the minor was at perfect liberty to pay for them in money, at the prices at which they were charged. His remedy, then, is simply to recover the price of the articles sold, as they were charged to the defendant, in the same manner as if there had been no expectation of payment in any other way than in money.

What objection can there be to the action of book debt ? There was a sale of goods ; a right to charge and to compel payment ; but not a right to compel it in any thing but money. The articles being necessaries, the minority of the defendant places him on no more favourable ground than if he were an adult. If it makes any difference, it is in favour of this action, since it enabled the defendant to rescind the agreement as to the mode of payment.

A special agreement respecting the mode of payment, where the article is sold and charged at its price in money, does not prevent the creditor, if the debtor does not pay in the article stipulated, from recovering the sum due in an action of book debt.

The right to charge exists immediately on the delivery of the articles. It does not arise in consequence of the recinding, or the refusal, or neglect to pay in the special manner authorized. The suit becomes necessary in consequence of that neglect ; but the right to charge always existed.

In *Bradley* v. *Goodyear*, 1 *Day* 104. the money charged was advanced in *payment* of a note, and so operated. The plaintiff never had any right to *charge*, but simply a *defence* to a suit on the note.

Here, the case is the same as if a third person had advanced these necessaries to the minor, while in the plaintiff's service, with an agreement that the minor's wages should be applied in payment, and the minor had avoided the service.

*Mix*, contra, after remarking, that no considerations of policy require that this action should be sustained, verbal contracts of apprenticeship with minors being dangerous substitutes for regular indentures, contended, 1. That the defendant was not liable, in any form of action, for the articles in question. In the first place, they were not delivered to him on a contract for necessaries ; on which alone a minor can be

New-Haven,
July, 1832.

Terrill
v.
Beecher.

subjected,    1 *Sw. Dig.* 51.    *Chitt. Cont.* 30, 1.    Secondly, there was no writing, and the contract was not to be performed in one year ; hence it was void by the statute of frauds. *Hall* v. *Rowley,* 2 *Root* 161. 1 *Sw. Dig.* 263.

2.    That if any suit can be sustained, it must be on the special agreement under which the articles were delivered. *Expressum facit cessare tacitum.*    That agreement is still in force, unrescinded.    Where a contract is to be rescinded at all, it must be rescinded *in toto,* and the parties put in *statu quo ;* which has not been done in this case.    *Weston* v. *Downes, Doug.* 23.  *Hunt* v. *Silk,* 5 *East* 449. 452.

3.    That, at any rate, book debt will not lie.    This form of action is founded in *necessity ;* but it is not necessary for the plaintiff to resort to it, in this case.    He certainly *may* have redress (if he is legally entitled to it) in another way.    The case will not abide the usual tests of the action of book debt.    The articles must have been delivered in the course of ordinary dealing ; and the right to charge, must exist at the time.    2 *Sw. Syst.* 166.  1 *Sw. Dig.* 582.    Neither of these facts transpired here.    In doubtful cases, the court will incline to *restrict,* rather than to *extend* the limits of this anomalous action.    *Weed* & al. v. *Bishop,* 7 *Conn. Rep.* 128. 131.

DAGGETT, J.    The question is, whether the account exhibited by the plaintiff, be a foundation for a recovery in the action of debt by book.

This action is given and regulated by our statute.    *Tit.* 9. *p.* 93.    It is said to have been co-eval with the government. See note to *sect.* 1. *p.* 93. (*a*)    Evidence of the parties and other persons interested, is admitted contrary to the rules of the common law.    Hence, it ought not to be extended beyond the necessity which gave birth to it.    In the daily intercourse of merchants, mechanics, farmers, &c. articles are sold and delivered, without any written or other proof, except that which can arise from the oaths of the parties.    To prevent a

(*a*)    That is, the *form of action* and the *practice* of admitting the parties as witnesses in the cause, have always prevailed.  But the first *statute* regarding book debts was introduced, at the revision in 1672 ; and this was merely a statute of *limitations.*    The first legislative provision, authorising the admission of evidence from the parties, and other persons interested, was enacted in *May* 1715.    See the notes to *tit.* 25. *p.* 101, 2. ed. 1808.    *R.*

failure of justice, this peculiar action has been introduced and tolerated.    Hence results the propriety of restricting it to its original objects.    It has been, in many instances, limited.    It has not been extended so as to embrace property loaned, and not returned; nor to compensation for injuries of any kind; nor to recover money paid on a note, which had not been applied. This was so ruled in *Bradley* v. *Goodyear*, 1 *Day*, 104., though there had been several decisions to that effect, prior to that period.    For similar reasons, it ought not to be extended to money or other articles, delivered in fulfilment of any con-tract.    It was further declared, by this court, in the case above cited, that no charge could be admitted on book, unless the right to charge existed at the time of the delivery of the article, and arose in consequence of such delivery.    These positions, I think are sound, and ought to govern in actions of debt by book,—and in this case.

The question, then, is, were these articles sold and delivered to the defendant, and he to be made debtor therefor?    The answer is on the bill of exceptions.    They were delivered in fulfilment of the special agreement of the plaintiff, to pay the defendant 25 dollars a year, &c.    Again, did the right to charge, arise in consequence of the delivery?    This must also be answered in the negative.    The right to charge, and to re-cover, arose from the violation of the agreement of the defend-ant, to serve the plaintiff the stipulated term.

Moreover, it is very clear, that the controversy, in this case, will be about the entering into, and violation of the spe-cial agreement.    To this the oaths of the parties are not ad-missible.    The oaths of the parties, regularly, go to the quan-tity, quality, and delivery of the article.    *Phenix* v. *Prindle, Kirb.* 209. per *Ellsworth*, J.    Parties are not unlimited wit-nesses.    They cannot testify on an issue, formed on a plea of tender, or release, or accord and satisfaction, or a new promise to revive a debt barred by the statute of limitations.    *Weed* & al. v. *Bishop*, 7 *Conn. Rep.* 128.    Perhaps it is safe to af-firm, that no action of debt by book, can be sustained, unless it be for articles, the sale and delivery of which may be proved by the testimony of the parties.    An application of that prin-ciple, will shew, that debt on book cannot be sustained, in this case; for the indebtedness, if any, grew out of the violation of an agreement, on the part of the defendant.

I think, therefore, that there is nothing erroneous in the judgment complained of.

PETERS and Bissell, Js. were of the same opinion.

HOSMER, Ch. J. and WILLIAMS, J. dissented.

Judgment affirmed.